IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CHARLIE BELL BULLOCK,**

    Petitioner,

v.                                                                                                                                     Civil Action No. **3:19CV774**

**HAROLD CLARK,**

    Respondent.

**MEMORANDUM OPINION**

Charlie Bell Bullock, a Virginia state prisoner proceeding *pro se* and *in forma pauperis*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his conviction in the Circuit Court of the City of Richmond, Virginia ("Circuit Court"). In his § 2254 Petition, Bullock claims that he is entitled to relief based upon the following grounds:[1]

---

[1] Bullock listed four grounds for relief in his § 2254 Petition form but for the most part only states that he was denied the effective assistance of counsel without any factual detail. Bullock then references that his claims are continued at specified pages in a twenty-three-page memorandum he attached. (*See* ECF No. 1, at 5, 7, 8, 10.) Bullock's memorandum is rambling, repetitive, and fails to identify clearly any specific claims for relief. Bullock's references to pages in the memorandum also fail to help the Court identify each claim. Bullock's presentation of his claims has frustrated the Court's ability to examine them. Moreover, to the extent that Bullock "incorporates by reference his state habeas pleadings and facts to support his claim" (*see, e.g.*, *id.* at 20), he may not do so. Bullock was required to include his claims in his § 2254 Petition and any supporting statement of his claims. The Court will not parse Bullock's submissions in the state court to construct claims for Bullock that he did not present in his § 2254 Petition.

    Respondent simply considers Bullock's claims in his § 2254 Petition to be the same as those he raised in his state petition. However, after reviewing Bullock's § 2254 Petition and Memorandum, the Court finds that Bullock has presented his claims here differently than addressed by the Supreme Court which further frustrates the Court's ability to examine his claims. In the instance that the Supreme Court of Virginia construed Bullock to raise a claim, but this Court does not consider it a claim fairly presented in his § 2254 Petition, the Court has reviewed the record and discerns no error in the Supreme Court of Virginia's dismissal of his claims.

Claim One: Counsel rendered ineffective assistance by failing to ensure the victim, A.S., testified at trial and by failing to object to "Confrontation Clause issues."[2] (ECF No. 1, at 18–20.)[3]

Claim Two: Counsel rendered ineffective assistance because: (a) "petitioner was found guilty of 'malicious wounding' without the element of malice ever having been proven" (*id.* at 6–7); (b) counsel should have argued that Bullock acted in self-defense (*id.* at 21, 23–24, 27–28); and, (c) the victim and his sister "initiated the violence." (*Id.* at 23.)

Claim Three: Counsel rendered ineffective assistance because: (a) "[p]ictures of the alleged victim's hands were submitted into evidence by the Commonwealth's Attorney," but the victim did not testify, and (b) "[c]ounsel should have called A.S. as a hostile witness." (*Id.* at 8.)

Claim Four: Bullock was "denied [the right to trial by jury] through trial counsel's failure to demand it on the day of trial." (*Id.* at 10, 29–30.)

Claim Five: Counsel rendered ineffective assistance "because counsel did not raise the indisputable physical evidence doctrine as a defense." (*Id.* at 30.)

Claim Six: "Counsel's cumulative errors prejudiced him." (*Id.* at 33.)

Respondent moves to dismiss on the ground that Bullock's claims lack merit. Bullock has responded. For the reasons stated below, the Motion to Dismiss (ECF No. 23) will be GRANTED.

## I. PROCEDURAL HISTORY

Following a bench trial, the Circuit Court convicted Bullock of malicious wounding, use of a firearm in the commission of malicious wounding, second offense, and possession of a firearm by a convicted felon, and sentenced him to thirty years of incarceration with fifteen years suspended. *Commonwealth v. Bullock*, Nos. CR15F03934–00, CR15F04982–00, CR15F04983–00, at 1–3 (Va. Cir. Ct. Jan. 19, 2017). Bullock appealed. The Court of Appeals of Virginia denied

---

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[3] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling and punctuation in the quotations from Bullock's submissions.

Bullock's petition for appeal. *Bullock v. Commonwealth*, No. 0168–17–2, at 1–4 (Va. Ct. App. Sept. 22, 2017). The Supreme Court of Virginia refused Bullock's subsequent petition for appeal. *Bullock v. Commonwealth*, No. 180323, at 1 (Va. Aug. 23, 2018). The Supreme Court of Virginia subsequently also denied Bullock's petition for rehearing. *Bullock v. Commonwealth*, No. 180323, at 1 (Va. Nov. 20, 2018).

On December 21, 2018, Bullock filed a petition for a writ of habeas corpus in the Supreme Court of Virginia raising claims similar to those in the instant § 2254 Petition. (*See* ECF No. 1–1, at 1–37.) Finding that Bullock failed to demonstrate ineffective assistance of trial counsel, on September 27, 2019, the Supreme Court of Virginia dismissed his petition. (ECF No. 25–1, at 1–10.)

## II.  ALLEGATIONS BARRED FROM FEDERAL HABEAS REVIEW

As an initial matter, throughout his accompanying memorandum, Bullock claims that the Supreme Court of Virginia erred in the standard of review it used to analyze the merits of his claims. (*See, e.g.*, ECF No. 1, at 21–22.) In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief." *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (citations omitted) (emphasis omitted). This is so because the habeas petitioner's detention results from the underlying state conviction, not the state collateral proceeding. *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." (citing *Bryant*, 848

F.2d at 493; *Bell–Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007); *United States v. Dago*, 441 F.3d 1238, 1248 (10th Cir. 2006))). Bullock's allegations that the Supreme Court erred during the state post-conviction proceedings fail to provide a cognizable basis for federal habeas corpus relief, and any such challenge will be DENIED.[4]

### III. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

As explained above, in order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination

---

[4] Bullock also points out instances where he contends the Supreme Court of Virginia "made that up" with respect to various facts. (*See, e.g.*, ECF No. 1, at 21, 22.) The Court is doubtful that these allegations state a claim of constitutional error reviewable in federal habeas. Nevertheless, as discussed in conjunction with his claims, Bullock fails to demonstrate that the Supreme Court of Virginia's conclusion that his ineffective assistance of counsel claims lack merit was an unreasonable determination of the facts based on the evidence. *See* 28 U.S.C. § 2254(d)(2).

was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Summary of the Evidence

The majority of Bullock's claims stem from his persistent belief that the evidence was insufficient to convict him of malicious wounding because he did not act with malice, he did not instigate the fight, and he was merely defending himself. This underlying premise lacks merit. The Court of Appeals of Virginia aptly summarized the overwhelming evidence of his guilt as follows:

> Appellant was convicted of malicious wounding, use of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. He contends that the trial court erred by denying his "motion to strike and in finding

5

him guilty of all offenses alleged where the Commonwealth's evidence was insufficient to overcome his claim of acting in the defense of others."

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" *Kelly v. Commonwealth*, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting *Davis v. Commonwealth*, 39 Va. App. 96, 99, 570 S.E.2d 875, 876–77 (2002)). "On appeal, we will consider the evidence in the light most favorable to the Commonwealth, as it prevailed in the trial court." *Whitehurst v. Commonwealth*, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014).

So viewed, the evidence established that on the morning of July 1, 2015, appellant arrived unannounced at Brittney Carmon's house. Carmon explained she and appellant had been in a relationship, that she was pregnant with their child, but that she considered their relationship over. In the week prior to July 1, appellant sent Carmon threatening text messages. Appellant was upset and angry when he arrived at Carmon's house and refused to leave. The two struggled at the front door as appellant tried to enter the residence. Carmon's brother, Antoine Smith, attempted to intervene and appellant punched him, knocking him to the ground. Appellant then fled the scene.

Carmon and Smith then drove to appellant's mother's house and confronted appellant's mother about appellant's behavior. Appellant came out of the residence "yelling and screaming" and temporarily left the scene. Appellant returned to the house and reappeared a short time later, emerging from a side street. Appellant carried a gun and was firing it at Smith. Smith then ran after appellant and returned fire with his own weapon. Carmon transported Smith to the hospital after discovering he had been shot in his hands.

Detective Kim Mooney processed the scene. She collected four cartridge casings from the gun Smith fired and six cartridge casings from a different weapon. A bullet recovered from Smith's hand was of the same caliber as the casings found at the scene. A treating physician testified about the extent of Smith's injuries.

In an interview with the police the day after the incident, appellant admitted borrowing a gun and firing at Smith. He admitted Carmon and Smith had been at his mother's residence for some time prior to the shooting and that he did not call for emergency help. He admitted shooting Smith with the weapon but claimed Smith had fired first.

Appellant argues he shot Smith because he "believe[d] his mother was in imminent danger of being harmed or even killed."

"Defense of others" is an affirmative defense. In considering the theory of defense of others, "[t]he Supreme Court has clearly recognized that one is privileged to use force in defense of family members." *Foster v. Commonwealth*, 13 Va. App. 380, 385, 412 S.E.2d 198, 201 (1991). However, one must reasonably apprehend death or serious bodily harm to another before he is privileged to use force in defense of that person. *Id.* at 385–86, 412 S.E.2d at 202. Because "the right to defend another 'is commensurate with self-defense,'" *id.* at 385, 412 S.E.2d at 201, "the overt act indicative of immediate danger" required for a self-defense defense is also necessary for a defendant to claim the defense of others defense,

> *Vlastaris v. Commonwealth*, 164 Va. 647, 652, 178 S.E. 775, 776 (1935). In determining whether an overt act occurred, "[w]ords and a 'threatening attitude' are not, by themselves, enough." *Carter v. Commonwealth*, 42 Va. App. 681, 694, 594 S.E.2d 284, 291 (2004).
>
> In this case, the trial court noted that there was no evidence of any explicit threats or the brandishing of a firearm when Smith and Carm[on] came to the residence. Appellant explained he left the house in order to obtain a firearm. By the time he approached the scene from outside, Smith was seated in Carmon's car and there was no imminent threat. The record supports the trial court's conclusion that appellant did not act in defense of others. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of malicious wounding, use of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.

*Bullock v. Commonwealth*, No. 0168–17–2, at 1–3 (Va. Ct. App. Sept. 22, 2017) (final alteration added).

### B. Counsel Was Not Ineffective

In Claim One, Bullock argues that counsel rendered ineffective assistance by failing to ensure the victim, A.S., testified at trial and by failing to object to "Confrontation Clause issues." (ECF No. 1, at 18–20.) During trial, A.S. did not testify. Bullock contends that "the pictures of A.S. were submitted without A.S. being made available for cross-examination as to how he received the injuries shown in the pictures." (*Id.* at 18.) Bullock argues that,

> [t]here is no conceivable reason why trial counsel would not have objected to these testimonial pictures being entered at trial, because, through them, A.S. was allowed to testify without being confronted for cross-examination. Such an occurrence certainly violates the right secured under the Sixth Amendment's Confrontation Clause and counsel's failure to raise the issue at trial precluded the petitioner from having the case heard on appeal on that issue . . . .

(*Id.* at 18–19.) In summarizing and rejecting this claim, the Supreme Court of Virginia explained:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel failed to object when the victim, A.S., did not testify at petitioner's trial.[5] Petitioner argues he was denied the right to confront A.S., it is "legally unheard of" for the victim not to testify, and the court could not convict petitioner without a "witness complaining about a crime being perpetrated against [him]."

---

[5] Petitioner waived his right to a jury and elected to be tried by the court.

7

> The Court holds this . . .claim . . . satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The record, including the trial transcript, demonstrates the Commonwealth did not introduce A.S.'s prior statements or call him as a witness at trial. Counsel thus lacked a basis to object under the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004) (the Sixth Amendment guarantees a defendant's right to confront persons who "bear testimony" against the defendant). Moreover, the Commonwealth may choose which witnesses it will present and need not call a witness named in the indictment. *Hill v. Commonwealth*, 88 Va. 633, 634 (1892). Counsel therefore could reasonably have determined any objection to A.S.'s absence at trial would have been meritless. *See Correll v. Commonwealth*, 232 Va. 454, 470 (1987) (counsel is not ineffective for failing to make a futile objection). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 25–1, at 1–2 (third alteration in original).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). The Confrontation Clause "bars the admission of 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.'" *United States v. Dargan*, 738 F.3d 643, 650 (4th Cir. 2013) (quoting *Crawford*, 541 U.S. at 53–54). Contrary to Bullock's assertion that the photograph of the victim's injuries was "testimonial," a photograph is neither a testimonial statement nor a witness at trial. *See United States v. Udeozor*, 515 F.3d 260, 268 (4th Cir. 2008) (noting the Confrontation Clause "applies to witnesses against the accused—in other words, those who bear testimony" (internal quotation marks omitted)). Thus, counsel cannot be faulted for raising a meritless Confrontation Clause challenge or objecting to the Commonwealth's failure to call the victim as a witness. Because Bullock demonstrates neither deficiency of counsel nor resulting prejudice, Claim One will be DISMISSED.

In Claim Two, Bullock argues that counsel rendered ineffective assistance because: (a) "petitioner was found guilty of 'malicious wounding' without the element of malice ever having

8

been proven" (ECF No. 1, at 6–7); (b) counsel should have argued that Bullock acted in self-defense (*id.* at 21, 23–24, 27–28); and, (c) counsel should have argued that the victim and his sister "initiated the violence." (*Id.* at 23). In summarizing and rejecting this claim, the Supreme Court of Virginia made the following findings:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel did not argue the lack of malice as a defense to the malicious wounding charge. Petitioner asserts counsel should have argued the evidence proved unlawful wounding or justifiable self-defense.
> The Court holds this portion of [Claim Two] satisfies neither the "performance" nor the "prejudice" prong of the two-part test announced in *Strickland*. The record, including the trial transcript and the Commonwealth's trial exhibits 1, 6, 7 and 8, demonstrates petitioner went to the home of Brittney Carmon on the date in question and argued with her. A.S., Carmon's sixteen-year-old brother, intervened. Petitioner hit A.S. in the face, ran to his car, and drove to the home of his mother, Gloria Bullock ("Gloria"). Carmon and A.S. then drove to Gloria's home. Carmon carried a hammer and kept a .38-caliber gun on the passenger floorboard of her car. When they arrived outside Gloria's home, Carmon used a hammer to break petitioner's taillight, yelled for Gloria to come outside, and argued with Gloria on the porch, where some other members of petitioner's family were present.
> Carmon testified the argument calmed down somewhat over the course of about twenty minutes, and A.S. returned to the car. A few minutes later, Carmon saw petitioner emerge from the side street firing a gun. She heard two gunshots, saw A.S. "duck down" and fall to the ground, and believed A.S. had been shot. Carmon saw petitioner fire more shots in the air as he ran back to the side street, and A.S. followed in petitioner's direction firing Carmon's .38-caliber gun. Carmon hailed A.S. back to her car, noticed A.S. had been shot, called the police, and drove A.S. to the hospital, where A.S. was treated for wounds to his left and right hands. Dr. Isaacs testified A.S. received gunshot wounds to both hands, a wound to A.S.'s right middle finger required immediate surgery, and a bullet was removed from A.S.'s left wrist.
> The police recovered two .45 caliber cartridge casings and one .38-caliber cartridge casing from the area where Carmon's car had been parked, three .38-caliber casings from the middle of the street, and four .45-caliber casings from the opposite side of the street. One .45-caliber bullet was recovered from the trunk of Carmon's car, and the bullet removed from A.S.'s wrist also was a .45-caliber bullet.
> At trial, petitioner testified that, as the argument between Carmon and Gloria escalated, he became concerned for his family's safety when he noticed the shape of a gun through a pocket of A.S's clothing. Despite having a prior violent felony conviction, petitioner left the house through the back door and borrowed a .45 caliber handgun from a neighbor. Petitioner testified he intended to approach

9

A.S. from behind, "draw down" on A.S., and force A.S. to "drop" the gun. Petitioner further testified A.S. was sitting in the passenger seat of Carmon's car when petitioner approached. When petitioner was about six feet away from the car, Carmon saw petitioner and screamed. A.S. turned around, opened the car door, and fired two shots. Petitioner returned fire. Petitioner admitted telling a detective he was "ready to kill" when A.S. got out of the car and started firing.

In his motion to strike, counsel raised a claim of defense of others. Counsel argued "necessity and duress" required petitioner to arm himself against the threat he perceived that A.S. posed to his family. Counsel further contended petitioner's defense of others "negates" the malicious wounding charge and the corresponding firearm charge. Counsel therefore argued there was a lack of malice, and his decision to do so within the context of a defense of others claim was reasonable given petitioner testified he acquired the gun based on the perceived threat A.S. presented to his family. Petitioner fails to demonstrate a reasonable likelihood that arguing he acted in justifiable self-defense or committed at most unlawful wounding would have produced a different outcome, given petitioner started the gunfight through his stated objective to "draw down" on A.S., and he fired several shots from the .45-caliber gun. *See Avent v. Commonwealth*, 279 Va. 175, 203 (2010) (justifiable self-defense claim not viable where the defendant was even slightly at fault); *Thomas v. Commonwealth*, 279, Va. 131, 160 (2010) (malice may be inferred from the defendant's deliberate use of a deadly weapon). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of [Claim Two], petitioner contends he was denied the effective assistance of counsel because counsel failed to argue Carmon and A.S. were the "armed aggressors" and sought "revenge" for the incident that occurred at Carmon's house earlier that morning. Petitioner asserts the evidence failed to establish he acted with malice because he intended to disarm A.S. and then engaged in mutual combat with A.S.

The Court holds this portion of [Claim Two] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates counsel argued Carmon and A.S. came to the Bullocks' home armed and sought "some sort of revenge," petitioner knew A.S. had a gun, petitioner approached from behind to "get the drop" on A.S. and disarm him, Carmon screamed when she saw petitioner, A.S. fired first, and petitioner returned fire. Petitioner did not act maliciously, counsel continued, because petitioner and A.S. were equally armed and petitioner retreated when he determined A.S. was no longer a threat. Consequently, the record demonstrates counsel argued Carmon and A.S. were armed aggressors seeking revenge, and petitioner and A.S. engaged in combat. Although counsel framed these points within a claim of defense of others, petitioner fails to demonstrate the reasonable probability of a different outcome had counsel used the words "mutual combat." Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

(ECF No. 25–1, at 3–5.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). As the Supreme Court of Virginia explained, counsel advanced a defense that Bullock was acting to defend his family and that Bullock did not act with malice. As counsel argued that Bullock did not act maliciously, the Court fails to discern any deficiency of counsel or resulting prejudice.[6]

To the extent that Bullock believes that counsel should have argued that he acted in self-defense, Bullock fails to explain, and the Court fails to discern, why these arguments would have been any more successful. Under Virginia law, "a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault." *Diffendal v. Commonwealth*, 382 S.E.2d 24, 25 (Va. Ct. App. 1989). Virginia recognizes two forms of self-defense:

> Justifiable self-defense arises when the defendant is completely without fault. In such a case, the defendant need not retreat, but is permitted to stand his ground and repel the attack by force, including deadly force, if it is necessary. Excusable self-defense arises when the defendant, who was at some fault in precipitating the difficulty, abandons the fight and retreats as far as he safely can before he attempts to repel the attack.

*Foote v. Commonwealth*, 396 S.E.2d 851, 855 (Va. Ct. App. 1990) (internal citations omitted). Regardless of the type of self-defense, "the amount of force used to defend oneself must not be excessive and must be reasonable in relation to the perceived threat." *Foster v. Commonwealth*, 412 S.E.2d 198, 200 (Va. Ct. App. 1991) (citing *Diffendal*, 382 S.E.2d at 26). "Furthermore, an individual's right to self-defend 'begins where the necessity begins and ends where it ends.'"

---

[6] The evidence also established that Bullock acted with malice. Bullock left the house, obtained a firearm, returned to the scene of the argument, and used the firearm. Bullock agreed that, when he shot at A.S., he was "ready to kill him." (Aug. 5, 2016 Tr. 200.)

*Caison v. Commonwealth*, 663 S.E.2d 553, 561 (Va. Ct. App. 2008) (quoting *Thomason v. Commonwealth*, 17 S.E.2d 374, 378 (Va. 1941)).

The evidence failed to bear out a defense of self-defense. Clearly, Bullock was not completely without fault. Thus, justifiable self-defense would not have been a viable defense, and counsel reasonably eschewed making that argument. With respect to excusable self-defense, this argument also fails because even if Bullock abandoned the initial fight and retreated, he instigated the gun fight. While she and Carmon were arguing, Bullock's mother instructed Bullock to go into the house. (Aug. 5, 2016 Tr. 155, 176–77.) Instead, Bullock left the location where the argument had taken place to obtain a firearm from a neighbor. (Aug. 5, 2016 Tr. 178–79.) It is undisputed that, at that point, A.S. had gone back to his sister's car and was sitting in the passenger seat. (Aug. 5, 2016 Tr. 37–38, 179.) Bullock then approached A.S. from behind with the intent to "draw down on him and take the gun from him." (Aug. 5, 2016 Tr. 199.) Even if Bullock did not shoot first, he instigated the gunfight. Moreover, if Bullock truly feared for his own safety, he could have stayed in the house, called the police to intervene, or, after leaving the house, simply stayed away until the fight resolved. Clearly, Bullock was not acting in self-defense.[7] Bullock fails to show any deficiency of counsel or resulting prejudice, and Claims Two (a) and (b) will be DISMISSED.

With respect to the claim that Carmon and A.S. initiated the violence, counsel made that argument, but the Circuit Court rejected it. Bullock fails to proffer what further argument counsel could have advanced that would have persuaded the Circuit Court to accept his theory. It is undisputed that Bullock and Carmon argued, and that Bullock punched A.S. Carmon admitted

---

[7] Bullock suggests that the Circuit Court and Respondent use "an incorrect standard of review" when addressing self-defense and the correct standard of self-defense is "the self-defense at home standard." (ECF No. 29, at 5.) This argument lacks merit. Bullock left his house to obtain a firearm and shot at A.S. down the street. Bullock was not defending his home.

that she drove to Bullock's mother's house with a hammer, immediately used the hammer to break the glass in the taillight of Bullock's mother's car, and then started arguing with Bullock's mother about allowing Bullock to use her car. (Aug. 5, 2016 Tr. 54–56, 67.) However, again, the evidence was undisputed that A.S. was in the car when Bullock obtained the gun and approached him. Bullock engaged A.S. and, ultimately, shot A.S. Bullock fails to demonstrate any deficiency of counsel or resulting prejudice. Accordingly, Claim Two (c) also lacks merit and will be DISMISSED.

In Claim Three (a), Bullock contends that counsel rendered ineffective assistance because "[p]ictures of the alleged victim's hands were submitted into evidence by the Commonwealth's Attorney," but the victim did not testify. (ECF No. 1, at 8.) In summarizing and rejecting this claim, the Supreme Court of Virginia explained:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel did not object when the Commonwealth introduced photographs of A.S.'s wounds during the direct examination of the emergency room surgeon, Dr. Jonathan Isaacs. Petitioner asserts the Commonwealth needed to produce A.S. as a witness in order to admit the photographs and establish "any person actually received any injuries."
> 
> The Court holds this portion of [Claim 3] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates Dr. Isaacs testified he is a hand surgeon and treated A.S.'s wounds in the emergency room. Dr. Isaacs reviewed the photographs and identified the wounds to A.S.'s hands and fingers and the bullet he removed from A.S.'s left wrist. Dr. Isaacs was competent to testify about the injuries he observed and to authenticate the photographs depicting those injuries. *See* Rule 2:901 ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence to support a finding that the thing in question is what its proponent claims."). Counsel could reasonably have determined any objection to the admission of the photographs on the ground that A.S. was not present at trial would have been meritless. *See Correll*, 232 Va. at 470. Thus, petitioner has failed to demonstrate counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 25–1, at 2.) Again, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Counsel reasonably discerned that the victim's testimony was not needed to authenticate the photographs of the victim's injuries after the treating physician testified that the photographs were an accurate portrayal of those injuries. Therefore, counsel cannot be faulted for failing to raise a meritless objection, and Bullock fails to demonstrate any prejudice. Claim Three (a) lacks merit and will be dismissed.

In Claim Three (b), Bullock faults counsel because "[c]ounsel should have called A.S. as a hostile witness." (ECF No. 1, at 8, 24.) In rejecting this claim, the Supreme Court of Virginia explained:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel ignored petitioner's request to call A.S. as a witness during the defense's case-in-chief. Petitioner asserts that, had counsel asked A.S. why he arrived at Gloria's home armed with a gun, A.S. "could have possibly admitted to willing[ly] engaging in combat on the day in question." . . .
> The Court holds this portion of [Claim Three] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the police's investigative report, the defense's motion to compel, the Commonwealth's response, and the trial transcript, demonstrates A.S. told a detective petitioner fired first and shot him in the hands. Before trial, petitioner's counsel alleged A.S. admitted he fired first and shot himself, but the Commonwealth responded A.S. never contradicted his statement to the detective. Petitioner does not allege A.S. would have corroborated petitioner's version of the events at trial, only that he "could possibly" have done so had counsel called him as a defense witness. Counsel could reasonably have determined A.S. would not contradict his statement or provide otherwise useful testimony. . . . Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 25–1, at 6–7 (footnote omitted)). The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Bullock now contends that A.S. "wants to submit an affidavit to aid the petitioner in this habeas petition by

stating in it that he willingly engaged petitioner in armed combat on the day he was injured" but the institution where he is incarcerated will not allow him "a copy of an affidavit form that shows him how to properly create an affidavit." (ECF No. 1, at 26–27.) Despite Bullock's current statement that the victim is now willing to provide certain testimony three years after the conviction, counsel cannot be faulted for failing to call A.S. as a witness. The evidence did not reflect that A.S. willingly engaged Bullock in armed combat at the time Bullock shot A.S. As the Supreme Court of Virginia reasonably concluded, counsel likely perceived that calling A.S. would not provide any useful defense testimony or could reaffirm Bullock's guilt. Claim Three (b) lacks merit and will be DISMISSED.

In Claim Four, Bullock alleges that he was "denied [the right to trial by jury] through trial counsel's failure to demand it on the day of trial." (*Id.* at 10, 29–30.) In rejecting this claim the Supreme Court of Virginia noted:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel failed to demand a jury trial. Petitioner asserts counsel should have invoked petitioner's right to a jury trial on the morning of trial, when petitioner said he was not satisfied with counsel's services and the court permitted petitioner to confer with counsel. At that point in the proceeding, petitioner argues, counsel should have told the court petitioner wanted a jury trial "in which he could raise the defense of others defense and have the jury instructed on that issue of the law." Petitioner further argues a properly instructed jury would have found petitioner acted in defense of others.
> The Court holds this . . . claim . . . satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the transcript of a June 15, 2016 hearing, the June 17, 2016 continuance order, and the trial transcript, demonstrates petitioner waived his right to a jury trial on June 15, 2016, and the court set the matter for a trial without a jury on August 5, 2016. During his arraignment at the outset of trial, petitioner agreed he waived his right to a jury trial. Petitioner then said he was not entirely satisfied with counsel's services, and the court directed petitioner to speak with counsel, which petitioner did. Neither counsel nor petitioner explained the nature of the disagreement before the court accepted petitioner's not guilty pleas and proceeded with the trial.
> Petitioner does not specify when, if ever, he instructed counsel to withdraw the jury waiver. Assuming petitioner stated while privately conferring with counsel

15

> that he wanted a jury trial, petitioner fails to proffer a legal basis for moving to withdraw his waiver or explain how such a motion, entrusted to the court's discretion, would have been successful. *See Commonwealth v. Williams*, 262 Va, 661, 671 (2001) (court did not abuse its discretion in denying motion to withdraw the defendant's jury trial waiver where the defense raised the motion on the morning of trial despite a two-month continuance). Moreover, petitioner's assertion that a jury, unlike the court, would have accepted petitioner's defense of others claim is pure speculation. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 25–1, at 7–8.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Bullock now contends he "instructed his attorney, on the day of trial, to move for a trial by jury and trial counsel failed to do so." (ECF No. 29–1, at 26.) Before trial, the Circuit Court asked: "I understand that Mr. Bullock has previously waived his right to a jury, is that correct, Mr. Bullock?" (Aug. 5, 2016 Tr. 10.) Mr. Bullock responded, "[y]es, ma'am." (Aug. 5, 2016 Tr. 10.) If Bullock had an issue with his jury waiver, he could have raised it with the Circuit Court at that time. The Court fails to discern any deficiency of counsel or resulting prejudice, and Claim Four will be DISMISSED.

In Claim Five, Bullock argues that counsel rendered ineffective assistance because "he did not raise the indisputable physical evidence doctrine as a defense." (ECF No. 1, at 30.) Bullock contends that counsel "fail[ed] to use the concrete physical description shown in the proffered illustration to demonstrate that A.S. was shot while holding the .380 pistol in firing position." (*Id.* at 31.) In finding this claim meritless, the Supreme Court of Virginia explained:

> [P]etitioner contends he was denied the effective assistance of counsel because counsel failed to argue the "physical facts show conclusively that the alleged victim was holding and pointing the .380 when he was shot." Petitioner asserts A.S.'s injuries to both hands "are consistent [with] someone getting hit with one bullet, in the hands, while they are holding a gun in two handed combat stance." In support of his assertion, petitioner proffers illustrations purporting to show the positions of A.S.'s hands, the locations of A.S.'s injuries, and the flight path of the bullet striking A.S.'s hands. Petitioner contends his illustrations corroborate his

16

testimony that A.S. shot at petitioner, and petitioner returned fire at A.S.'s hands intending to disarm him. Petitioner argues counsel should have asserted any testimony contradicting the "indisputable" physical evidence "is incredible and must be ignored."[8]

The Court holds [Claim Five] satisfies neither the "performance" prong or the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner's illustrations do not show "indisputable" physical facts. Instead, they are petitioner's interpretation of the facts and, even if offered as demonstrative evidence, would have been entitled to no greater weight than the rest of the evidence, which the trial court was entitled to weigh. *See Commonwealth v. Jackson*, 276 Va. 184, 193 (2008) (the trier of fact evaluates the credibility of the witnesses, resolves the conflicts in their testimony, and weighs the evidence as a whole). Moreover, the record, including the trial transcript and the Commonwealth's trial exhibit 1, demonstrates A.S. received a significant wound to his right middle finger and also received a wound to his left wrist, where a bullet was removed. No evidence pointed to a single bullet as the cause of these wounds, showed how A.S.'s hands were positioned when he was shot, or established A.S shot first, and the Commonwealth made no such stipulations. Under the circumstances, counsel reasonably relied on petitioner's testimony to assert A.S. fired first and petitioner attempted to disarm him. Furthermore, counsel could reasonably have determined any argument the physical evidence indisputably proved the same assertions would have been futile. *See Correll*, 232 Va. at 470. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

---

[8] Petitioner also contends counsel failed to "avail himself of the physical facts rule" to contradict testimony from an unspecified witness that A.S. "was in the car when he was shot" and then retrieved the .38-caliber gun to return fire. Under the "physical facts rule," witness testimony that contradicts the laws of nature of science has no probative value and cannot support a verdict. *Zollman v. Symington Wayne Corp.*, 438 F.2d 28, 31–32 (7th Cir. 1971); *see also* Black's Law Dictionary 1147 (6th ed. 1990) ("[A] judge is required to take case from jury if plaintiff's evidence as to physical facts leads to an impossibility in the light of undisputed physical laws.") However, that rule lacks force where a witness does not make precise assertions about objective physical facts such as time, location, and speed. *See Citizens Rapid Transit Co. v. O'Hara*, 203 Va. 979, 981 (1962) (witness' estimates of physical facts, if incorrect, were not incredible as a matter of law). The record, including the trial transcript, demonstrates Carmon, the only witness from the Commonwealth, who saw the gunfight, testified she heard but did not see the first two gunshots, did not see A.S. get shot, and, therefore, could not fix A.S.'s precise location when the first shot was fired. Thus, assuming without deciding the physical facts rule governs in criminal prosecutions in Virginia, it did not apply in the manner petitioner alleges.

17

(ECF No. 25–1, at 8–9 (footnote number altered).) The Court finds no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2). Counsel argued that A.S. shot first based solely on his client's testimony. Clearly, A.S. suffered gunshot wounds on his hands and wrist, and a bullet traced to the gun Bullock fired was removed from A.S.'s wrist. The Court fails to discern, and Bullock fails to identify, what additional argument counsel could have advanced pertaining to the physical evidence or what evidentiary value Bullock's illustrations would have added. Bullock demonstrates neither deficiency of counsel or resulting prejudice. Claim Five lacks merit and will be DISMISSED.

    **C.**    **Cumulative Prejudice**

In Claim Six, Bullock contends that "counsel's cumulative errors prejudiced him." (ECF No. 1, at 33.) The Supreme Court of Virginia rejected this claim as follows:

> Petitioner contends he was denied the effective assistance of counsel because the cumulative effect of counsel's errors was prejudicial.
>     The Court holds petitioner's [Claim Six] is without merit. As addressed previously, petitioner's individual claims of ineffective assistance of counsel are without merit. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." *Lenz v. Warden of the Sussex I State* Prison, 267 Va. 318, 340, *cert. denied*, 542 U.S. 953 (2004).

(ECF No. 25–1, at 10.) As the Supreme Court of Virginia correctly concluded, the cumulative analysis that Bullock advances is not permitted here, because the Court has rejected Bullock's assertion that counsel performed deficiently. *Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998). Attorney "acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" *Id.* (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)). Accordingly, Claim Six will be DISMISSED.

## V. REQUEST FOR EVIDENTIARY HEARING

In the body of Bullock's memorandum attached to the § 2254 Petition, he indicates, *inter alia*, that the Court should "conduct an evidentiary hearing and allow A.S. to testify as to what his part in the fray that resulted in his injuries was." (ECF No. 1, at 27.) In determining whether a case warrants an evidentiary hearing, a federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000). A federal court must also consider the standards set forth in 28 U.S.C. § 2254 when considering whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Here, based on a thorough evaluation of Bullock's claims and the record before the Court, the Court concludes that Bullock's claims of ineffective assistance of counsel lack merit. Therefore, the Court concludes that habeas relief under § 2254 is not warranted. To the extent that Bullock requests that the Court hold an evidentiary hearing, that request (ECF No. 1, at 27) will be DENIED.

## VI. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 23) will be GRANTED. Bullock's claims will be DISMISSED and his § 2254 Petition will be DENIED.

The action will be DISMISSED. A certificate of appealability will be DENIED.[9]

An appropriate Final Order shall issue.

/s/ 
Roderick C. Young
United States Magistrate Judge

Date: May 20, 2020
Richmond, Virginia

---

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Bullock fails to meet this standard.